JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
Christopher A. Gilmore, OSB No. 980570
Senior Assistant County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone:  (503) 988-3138
Facsimile:   (503) 988-3377
Email: chris.gilmore@multco.us
    *Of Attorneys for Defendants Multnomah County,*
    *Michael Reese, Steven Alexander, and Jeffery Wheeler*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| THERESA DAVIS, RASHAWD DUHART, ROBIN LUNDY, and SEAN BERGLUND, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MULTNOMAH COUNTY, a political subdivision of the state of Oregon; MICHAEL REESE, STEVEN ALEXANDER, JEFFERY WHEELER, and JOHN DOES 1-50, acting in concert and in their individual capacities,<br><br>Defendants. | Civil No. 3:20-cv-02041-IM<br><br>**DEFENDANTS' MOTION TO DECERTIFY THE CLASS**<br><br>Oral Argument Requested |

DEFENDANTS' MOTION TO DECERTIFY THE CLASS

**TABLE OF CONTENTS**

A.  MOTION ......................................................................................................................... 1

B.  INTRODUCTION............................................................................................................. 1

C.  PROCEDURAL BACKGROUND ................................................................................... 3

D.  STANDARD FOR DECERTIFICATION........................................................................ 4

    1.  FRCP 23(a) ............................................................................................................ 5

        a.  Typicality .................................................................................................... 5
        b.  Commonality............................................................................................... 5
        c.  Adequacy of Representation ...................................................................... 7

    2.  FRCP 23(b)(3) ....................................................................................................... 7

        a.  Predominance.............................................................................................. 7
        b.  Superiority................................................................................................... 8

E.  ARGUMENT FOR DECERTIFICATION ....................................................................... 8

    1.  No Commonality.................................................................................................... 8

        a.  No substantive due process right to be free from residual tear gas ............ 9
        b.  No deliberate indifference when weighing policy choices ...................... 11
        c.  No longstanding practice .......................................................................... 12
        d.  No defined subclass to support a partial evacuation claim ...................... 15
        e.  No claim for failure to provide linen or clothing exchanges ................... 16
        f.  No common injury ..................................................................................... 17

    2.  No Typicality ....................................................................................................... 20

    3.  Inadequate Representation ................................................................................... 21

    4.  No Predominance.................................................................................................. 23

    5.  Class Action Not Superior ................................................................................... 25

F.  CONCLUSION ............................................................................................................... 25

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

# TABLE OF AUTHORITIES

**Cases**

*Aichele v. City of Los Angeles*, 314 F.R.D. 478, 495 (C.D. Cal. 2013) ....................................... 18

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 664 (1997) ....................................................... 8, 24

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) .................................................. 25

*Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1254 (9th Cir. 2024) ......
………………………………………………………………………………………………………..20, 25

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)......................................... 23

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 399–400 (1989).................................................... 17

*Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ..................................................................... 25

*D.C. by & through Garter v. Cnty. of San Diego*, No. 15CV1868-MMA (NLS), 2017 WL
    5177028, at \*15 (S.D. Cal. Nov. 7, 2017).................................................................................. 6

*Don't Shoot Portland et al v. City of Portland*, 3:20-cv-00917-HZ ...................................... 13, 14

*Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016)......................................... 17

*DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1245 (9th Cir. 2024).................................... 7, 8

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, (1982) .......................................................... 4

*Graham v. Connor*, 490 U.S. 386, 395 (1989) ............................................................................. 10

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).............................................. 5

*Helling v. McKinney*, 509 U.S. 25, 35 (1993)............................................................................... 14

*Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011)........................................ 12

*In re Paxil Litig.*, 212 F.R.D. 539, 548 (C.D. Cal. 2003) ............................................................ 17

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014)............................................. 18

Page ii – TABLE OF AUTHORITIES

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) ....................................................... 5

*Kaufmann v. Pima Cnty.*, No. CV 11-534 TUC DCB, 2014 WL 12538174, at *2 (D. Ariz. Jan. 21, 2014)................................................................................................................................. 10

*Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024) ......................................... 20

*Maney v. Brown*, 464 F. Supp. 3d 1191, 1210 (D. Or. 2020) ........................................................ 12

*Miller v. City of Scottsdale*, 88 F.4th 800, 806 (9th Cir. 2023) ..................................................... 11

*Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978)......... 12, 17, 23

*Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000)......................................................... 11

*Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) ...................................................................... 5

*Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) ........................................... 18, 25

*Polanco v. Diaz*, 76 F.4th 918, 923 (9th Cir. 2023)...................................................................... 11

*Reach Cmty. Dev. v. United States Dep't of Homeland Sec.*, 174 F.4th 1143, 1145 (9th Cir. 2026) .................................................................................................................................. 9, 10, 14, 23

*Sonneveldt v. Mazda Motor of Am., Inc.*, No. 23-55325, 2024 WL 5242611, at *2 (9th Cir. Dec. 30, 2024)................................................................................................................................... 4

*Spain v. Procunier*, 600 F.2d 189, 196 (9th Cir. 1979) ........................................................... 15, 23

*Thomas v. Cnty. of Los Angeles*, 703 F. App'x 508, 511 (9th Cir. 2017) ....................................... 6

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)...................................................................... 12

*Trump v. CASA, Inc.*, 606 U.S. 831, 867 (2025)............................................................................. 5

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) ............................. 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) .................................................. 6, 7

*Wyatt B. v. Kotek*, 146 F.4th 1267, 1274 (9th Cir. 2025) ............................................................... 4

Page iii – TABLE OF AUTHORITIES

**Other Authorities**

§ 1777 Class Actions in Which Common Questions Predominate Over Individual Questions—In

General, 7AA Fed. Prac. & Proc. Civ. § 1777 (3d ed.) ............................................................. 7, 8

**Rules**

FRCP 23(a) ............................................................................................................................... 5

FRCP 23(a)(2) .......................................................................................................................... 5

FRCP 23(a)(3) .......................................................................................................................... 5

FRCP 23(b) ....................................................................................................................... 7, 8, 20

FRCP 23(b)(3) ................................................................................................................... 6, 7, 22

FRCP 23(c)(1)(C) ................................................................................................................. 1, 4

Local Rule 7.1(a)(3)(A) ............................................................................................................ 1

Page iv – TABLE OF AUTHORITIES

## LR 7.1 - CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but have been unable to resolve the issues.

### A.    MOTION

Multnomah County Defendants move this Court pursuant to FRCP 23(c)(1)(C) for decertification of the class and for reconsideration of summary judgment on the remaining *Monell* claim.

### B.    INTRODUCTION

This case is a class action seeking relief under the Eighth and Fourteenth Amendments. Plaintiffs allege the Multnomah County Sheriff failed to protect inmates from tear gas that entered the Multnomah County Detention Center during the riots in 2020.

Defendants are asking for decertification of the class for the following reasons:

**Commonality:** The commonality requirement is not met because:

1.    There is no common question of law –

    a.    There is no right to be free from residual exposure from tear gas deployed outside of the jail used for crowd control by another agency under the Eighth or Fourteenth Amendment;

    b.    There can be no deliberate indifference where Sheriff Reese weighed different policy options and was granted discretionary immunity in deciding how to respond to the riots;

    c.    There can be no *Monell* claim in the absence of a longstanding pattern or practice; and

    d.    Plaintiffs failed to allege a claim under the Eighth or Fourteenth Amendment for failure to provide clean clothing or linen and more importantly this issue was never raised at all by any adult in custody during the entire summer of 2020.

Page 1 – DEFENDANTS' MOTION TO DECERTIFY CLASS

2.     There is no common injury because –

a.     A significant number of the class members suffered no injury at all or were not in custody for a sufficient period of time to qualify as a constitutional injury; and

b.     The emotional harm claimed requires an individualized assessment and as a result there is no efficient class-wide damages model.

**Typicality:** The typicality requirement is not met in this case because the designated Plaintiffs do not align with the interests of the class as a whole. All of the designated Plaintiffs under the Fourteenth Amendment claims were in custody the *entire* summer while the majority of the class members were in custody for only a few days. Any outcome from trial on liability will not address whether the shorter time in custody is in fact a constitutional injury. The same is true for the Eighth Amendment. The sole designated Plaintiff does not represent a typical class member because he was in custody for a total of nine (9) days while the majority of the class was in custody for less than half that time period. The defense for adults in custody for a shorter time period will be different because the risk of serious harm is significantly reduced and harder to prove.

**Adequacy of Representation:** Consistent with the typicality requirement, the designated Plaintiffs under the Fourteenth Amendment do not adequately represent the class because the majority of the class was in custody for four (4) days or less. Plaintiff Sean Berglund is the only representative under the Eighth Amendment. He was in custody for nine (9) days and also does not represent the majority of the class. Robin Lundy is asserting aggravated PTSD from tear gas exposure which is not a shared injury with the remainder of the class. Finally, Theresa Davis failed to appear for her deposition, is no longer in contact with opposing counsel, and as a result is not vigorously pursuing the interests of the class as a whole.

Page 2 – DEFENDANTS' MOTION TO DECERTIFY CLASS

**Predominance & Superiority:** The interests of the class do not outweigh the individual claims in this case. The injuries in this case vary considerably based on time in custody and the degree of exposure. Plaintiffs are leaning heavily on emotional damages to generate a massive payout which only emphasizes the need for an independent medical assessment to estimate actual harm. This cannot be avoided in a case given the diversity of mental health issues in the jail population.

## C.    PROCEDURAL BACKGROUND

The following relevant procedural history is noted for purposes of this Motion:

A Complaint was filed on February 2, 2022 requesting:

> "Compensatory noneconomic and economic damages in an amount to be determined by a jury and for prejudgment interest on said sums."

(ECF No. 1).  A Motion to Certify the Class was filed on November 2, 2022 proposing:

> "Plaintiffs' counsel proposes one of two alternatives for phase two: (1) a special master who establishes objective criteria to assess damages for class members based upon results in the class representatives' trials and information from each class member's file (medical records and statement under oath); or (2) bellwether trials of a group of ten representative class members to provide data on the value of the remaining claims."

(ECF No. 30).  At the time Plaintiffs held out to this Court that certification was proper arguing "[w]here damages suffered by class members *are not large*" certification is appropriate. (ECF No. 30, p. 35).

The First Amended Complaint was filed on October 31, 2023 again requesting damages:

> "For compensatory noneconomic and economic damages in an amount to be determined by a jury and for prejudgment interest on said sums."

Page 3 – DEFENDANTS' MOTION TO DECERTIFY CLASS

(ECF No. 44). Defendants in this case consented to certification of the class with the "right to move to decertify the class, in the appropriate circumstances, at a later stage of this case." (ECF No. 53).

An Order was issued certifying the class:

> "All adults who were detainees at Multnomah County Detention Center who were exposed to tear gas or other chemical agents between May 29, 2020, and July 29, 2020."

(ECF No. 57).

Plaintiffs are now seeking excessive damages based on pre-existing health conditions and arguing they are permanent. (ECF No. 116, p. 37). Both parties are now turning to individual medical examinations in preparation for trial.

This Court issued an Opinion and Order on January 30, 2026 granting summary judgment in favor of Defendants on all claims excluding the *Monell* claim. (ECF No. 162).

## D.    STANDARD FOR DECERTIFICATION

Decertification is authorized under Fed.R.Civ.P. 23(c)(1)(C):

> "An order that grants or denies class certification may be altered or amended before final judgment."

The express test of the federal rule governing certification authorizes this Court to consider the adequacy of certification at any time. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Wyatt B. v. Kotek*, 146 F.4th 1267, 1274 (9th Cir. 2025); and *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 23-55325, 2024 WL 5242611, at *2 (9th Cir. Dec. 30, 2024).

/ / /

/ / /

Page 4 – DEFENDANTS' MOTION TO DECERTIFY CLASS

### 1.    FRCP 23(a)

Certification is proper only if the trial court is satisfied, after a ***rigorous analysis***, that the prerequisites of Rule 23(a) have been satisfied. *Trump v. CASA, Inc.*, 606 U.S. 831, 867, 145 S. Ct. 2540, 2566, 222 L. Ed. 2d 930 (2025). Under Rule 23(a) of the Federal Rules of Civil Procedure, plaintiffs seeking class certification must satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Numerosity is not in question in this case.

### a.    Typicality

The purpose of the typicality requirement in FRCP 23(a)(3) is to ensure that the interests of the *class representatives* are aligned with the interests of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). The applicability of different defenses to the class representative will preclude typicality if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.*

### b.    Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that "questions of law or fact common to the class" be present in order to maintain a class action. Plaintiffs' claims must depend upon a common contention such that determination of their truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

Page 5 – DEFENDANTS' MOTION TO DECERTIFY CLASS

The commonality rule requires the plaintiff to demonstrate that the ***class members have suffered the same or similar injury***. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). Where the injuries are not sufficiently similar certification is not warranted. *Thomas v. Cnty. of Los Angeles*, 703 F. App'x 508, 511 (9th Cir. 2017) ("* * * class failed to meet the commonality requirement of Federal Rule of Civil Procedure 23(b)(3) because the damages suffered by individual class members were insufficiently similar to be established through representative testimony about "what it was like to sleep on the floors" at the County jail) and *D.C. by & through Garter v. Cnty. of San Diego*, No. 15CV1868-MMA (NLS), 2017 WL 5177028, at *15 (S.D. Cal. Nov. 7, 2017), amended, No. 15CV1868-MMA (NLS), 2018 WL 692252 (S.D. Cal. Feb. 1, 2018), aff'd, 783 F. App'x 766 (9th Cir. 2019) (proving injury to human dignity and emotional distress with respect to claims that juveniles were subject to physical examinations without the presence of a parent or guardian will vary from person to person).

As the Supreme Court held, "what matters to class certification ... is not the raising of common 'questions' - even in droves - but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541 (citation omitted). Mere violations of "the same provision of law" is not enough. *Wal–Mart Stores, Inc. v. Dukes*, 564 US at 350, 131 S.Ct. 2541 (2011). Commonality often overlaps with the merits of the plaintiff's underlying claim. *Wal–Mart Stores, Inc.*, at 2551 (2011).

/ / /

/ / /

Page 6 – DEFENDANTS' MOTION TO DECERTIFY CLASS

### c.    Adequacy of Representation

In determining whether a proposed class representative will adequately protect the interests of the class, the court asks whether the proposed class representatives and their counsel have any conflicts of interest with any class members and whether the proposed class representatives and their counsel will prosecute the action vigorously on behalf of the class.

### 2.    FRCP 23(b)(3)

Class certification must also satisfy the requirements of at least one of the categories under Rule 23(b). In this case class certification rests on Rule 23(b)(3).

Rule 23(b)(3) provides that class certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). Both predominance and superiority are the two prerequisites under FRCP 23(b)(3). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362, 131 S. Ct. 2541, 2558, 180 L. Ed. 2d 374 (2011). It encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. § 1777 Class Actions in Which Common Questions Predominate Over Individual Questions—In General, 7AA Fed. Prac. & Proc. Civ. § 1777 (3d ed.).

### a.    Predominance

In considering predominance, the court begins "with the elements of the underlying cause of action." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1245 (9th Cir. 2024), cert. denied, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025). Plaintiffs must show that a common question relating

Page 7 – DEFENDANTS' MOTION TO DECERTIFY CLASS

to an essential element predominates. *Id*. A class may fail to establish predominance where even one essential element requires individualized determination and this individualized issue outweighs common, aggregation-enabling issues. *DZ Rsrv. v. Meta Platforms, Inc*. at 1245 (9th Cir. 2024). Predominance is met where common questions of law or fact "can be determined in one stroke." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 664, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

### b.      Superiority

The second requirement prescribed by Rule 23(b)(3) is that the court must find the class action to be "superior to other available methods for the fair and efficient adjudication of the controversy." § 1777 Class Actions in Which Common Questions Predominate Over Individual Questions - In General, 7AA Fed. Prac. & Proc. Civ. § 1777 (3d ed.). To aid the court in determining whether class-action treatment would be superior, subdivision (b)(3) lists four factors that the court should consider. They are: (A) the interest of the individual class members in controlling the litigation; (B) the extent and nature of any ongoing litigation involving the same matters; (C) the desirability of concentrating the adjudication of all the members' claims in the forum in which the class action is lodged; and (D) the management difficulties that may be encountered in a class action.

### E.      ARGUMENT FOR DECERTIFICATION

#### 1.      *No Commonality*

Plaintiffs' basis for certification relies on common questions of law based on a failure to protect under the Eighth and Fourteenth Amendment. (ECF No. 30, p. 26). In this case there are no common questions of law sufficient to support a class.

/ / /

Page 8 – DEFENDANTS' MOTION TO DECERTIFY CLASS

### a.    No substantive due process right to be free from residual tear gas

Since this Court's opinion on summary judgment was issued, the Ninth Circuit in *Reach Cmty. Dev. v. United States Dep't of Homeland Sec.*, 174 F.4th 1143, 1145 (9th Cir. 2026) specifically addressed whether: "plaintiffs had a constitutional substantive-due-process right to "bodily integrity" to be free of exposure to chemicals that were released when federal law enforcement officers used tear gas and other non-lethal devices to disperse the crowds." The Court held there was no such right. *Reach Cmty. Dev.* at 1145 (9th Cir. 2026).

The facts of reach *Reach* are similar to the case at hand:

> "Federal law enforcement officers have deployed non-lethal crowd-control devices (such as tear gas) to disperse disruptive crowds and to prevent an escalation of lawlessness and violence. Some of the gas from the deployment of such devices has *1146 reached neighboring buildings, including Gray's Landing, an apartment complex in which several of the plaintiffs here reside. Opinion & Order 5–7, 10. Plaintiffs allege that, because of their exposure to the crowd-control chemicals, they have experienced serious health consequences - such as acute respiratory distress and the burning of the skin, eyes, and throat. Amended Complaint ¶ 121."

*Id*. at 1145–46 (9th Cir. 2026). The District Court reasoned:

> "The supposed constitutional right at issue has no basis in our nation's history or tradition. Plaintiffs have not pointed to any historical prohibition - much less a "deeply rooted" one - against the use of non-lethal crowd-control devices by law enforcement. To the contrary, such devices have long been a common tool of law enforcement to disperse crowds that have turned disruptive and violent. As far as we are aware, "no federal or state court" has recognized the Plaintiffs' claimed right. *Id.* at 241, 142 S.Ct. 2228. Nor have the parties pointed us to "any scholarly treatise" that would support such a right. *Id.* Simply put, it does not appear to exist.
>
> Even further afield, Plaintiffs want us to find an unwritten constitutional right (against the use of such devices) that is possessed not by the direct targets of the government action (such

Page 9 – DEFENDANTS' MOTION TO DECERTIFY CLASS

as the crowds) but by the neighboring residents who may be incidentally affected by that action. See Opinion & Order 4 ("[T]his case is not about the rights of protestors."). But if the direct targets of the action have no substantive-due-process right here, then neither does the neighbor."

*Reach Cmty. Dev*. at 1145 (9th Cir. 2026).

While *Reach Cmty. Dev*. addresses due process rights under the Fifth Amendment, the same result applies in the context of the Fourteenth Amendment. *Kaufmann v. Pima Cnty*., No. CV 11-534 TUC DCB, 2014 WL 12538174, at *2 (D. Ariz. Jan. 21, 2014) (The Fifth Amendment contains a mirror image of the due process clause. A substantive due process claim fails under the Fifth Amendment for the same reason it fails under the Fourteenth Amendment.).

The constitution does not provide rights to folks in custody that are not otherwise available to free citizens.

Moreover, any protections against the residual impacts from the use of force event in this case (deployment of tear gas) are a Fourth Amendment claim against the federal government and not a Fourteenth Amendment claim for failure to protect. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989) (Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims). The exposure in this case occurred as a result of tear gas deployments on different days resulting in secondary exposure. Each force event is governed under the Fourth Amendment.

/ / /

/ / /

/ / /

Page 10 – DEFENDANTS' MOTION TO DECERTIFY CLASS

**b.    No deliberate indifference when weighing policy choices**

In summary judgment Sheriff Michael Reese was granted discretionary immunity on the state law claims. The court reasoned he was exercising policy judgment over the difficult circumstances he faced during the summer of 2020:

> "Reese testified that one reason he decided not to evacuate the MCDC was because "we were in a pandemic, so we were trying to spread people out to keep them from getting sick." Reese Dep. 33:23–24, Gilmore Decl. Ex. 3, ECF 106-3 at 14. But in contrast to the MCDC, the MCIJ "has very few single cells and is mostly an open dorm where you just have bunks." Jarmer Dep. 27:5– 7, Gilmore Decl. Ex. 7, ECF 106-7 at 5. Therefore, the MCIJ's "open dorm setting," Reese Dep. 34:5, Gilmore Decl. Ex. 3, ECF 106-3 at 15, presented hurdles to not only social distancing but also AIC safety. As "the only maximum security jail in the State," MSJ, ECF 89 at 21, the MCDC housed certain AICs who were "dangerous people who would in an open dorm setting potentially" harm other AICs, Reese Dep. 34:7–9, Gilmore Decl. Ex. 3, ECF 106-3 at 15. Thus, Reese had to weigh many different policy considerations in his decision not to evacuate the jail."

(ECF No. 162, pp.  30-31). This court is required to give deference to the executive in carrying out the difficult job of corrections, particularly when trying to keep people from dying from COVID.  *Miller v. City of Scottsdale*, 88 F.4th 800, 806 (9th Cir. 2023) ("We reiterate as a general rule of law that "in the midst of a dangerous health emergency," we must "ensure the proper deference is given to local governmental officials.") and *Polanco v. Diaz*, 76 F.4th 918, 923 (9th Cir. 2023) (The *transfer* sparked an outbreak of COVID-19 at San Quentin that ultimately killed one prison guard and over twenty-five inmates.).

Based on this factual record, a choice between competing risks (evacuate and risk COVID or defend in place and suffer from tear gas exposure) does not rise to the level of deliberate indifference. *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate.").

Page 11 – DEFENDANTS' MOTION TO DECERTIFY CLASS

It is worth noting that the *same* lawyers suing Multnomah County here asserted in *Maney v. Brown*, 464 F. Supp. 3d 1191, 1210 (D. Or. 2020) that the Department of Corrections was deliberately indifferent for failing to implement social distancing during COVID during the *exact time period at issue in this case*. Clearly the arguments in this case ignore the true risks associated with COVID as a matter of convenience to achieve a different result.

### c.    No longstanding practice

The case law is well settled that liability for improper custom may not be predicated on isolated or sporadic incidents.  The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018) and *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). It must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). What is sufficient to qualify as a longstanding practice or custom is a question of law.

Here, Plaintiffs assert the class includes: "All adults who were detainees at Multnomah County Detention Center who were exposed to tear gas or other chemical agents between May 29, 2020, and July 29, 2020." (ECF No. 57, p. 2).

It goes without saying that there can be no pattern based on as of May 29, 2020 as a matter of law.

The protests and deployment of gas following the initial unrest on May 29, 2020 continued to be sporadic during the entire month of June. Law enforcement reports and HVAC records show that tear gas was deployed intermittently in June:

Page 12 – DEFENDANTS' MOTION TO DECERTIFY CLASS

(ECF No. 98 (MCSO records of tear gas deployment), ECF No. 103 (review of video by Kyle Smith), *Don't Shoot Portland et al v. City of Portland*, 3:20-cv-00917-HZ, ECF No. 73 (PPB records of tear gas deployment), and ECF No. 43-27 (work task records of tear gas).

Although tear gas deployment was more frequent in July, it was still sporadic:

Page 13 – DEFENDANTS' MOTION TO DECERTIFY CLASS

ECF No. 98 (MCSO records of tear gas deployment), ECF No. 103 (review of video by Kyle Smith), *Don't Shoot Portland et al v. City of Portland*, 3:20-cv-00917-HZ, ECF No. 73 (PPB records of tear gas deployment), ECF No. 43-27 (work task records of tear gas) and ECF No. 42-33 (situation reports). Like June, July also experienced intermittent deployment of tear gas.

Infiltration of tear gas was based on numerous unpredictable factors including whether a protest would occur, the criminal conduct of persons associated with the protest, and the response by the federal government to use tear gas.

Once a decision to use tear gas was made by the federal government, the seriousness of the risk depended on the number of cannisters deployed, where they were deployed, whether they deployed simultaneously or over a period of time, and whether the wind carried the tear gas towards or away from the Justice Center. (ECF No. 89, pp. 23-26 of 102 (video showing tear gas dissipating within minutes and being carried away from the Justice Center)).

None of these variables were consistent throughout the summer. ECF No. 89, pp. 27 of 102 (Plaintiffs' testimony that the tear gas was intermittent and varied in degree); ECF No. 98 (law enforcement reports showing varying numbers and timing of tear gas cannisters deployed); and ECF No. 103 (video review demonstrating the varying numbers and timing of tear gas cannisters deployed).

Plaintiffs have the burden of demonstrating a substantial risk to serious harm. *Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993) (Plaintiff must show that he was exposed to levels of ETS that pose an unreasonable risk of serious damage to his future health). Mere exposure to tear gas alone is not a constitutional violation. *Reach Cmty. Dev. v. United States Dep't of Homeland Sec.*, 174 F.4th 1143, 1145 (9th Cir. 2026) and *Spain v.*

Page 14 – DEFENDANTS' MOTION TO DECERTIFY CLASS

*Procunier*, 600 F.2d 189, 196 (9th Cir. 1979). There must be concentration such that the danger presented not just a risk of harm but a substantial risk of *serious injury*.

Based on this record there was no longstanding practice or custom during the summer of 2020 that meets this standard. There most certainly was no pattern or practice on day one of the protests. Nor was there a consistent deployment of tear gas through the entire month of June. The only possible date, if any, was when the air dampers were closed every day starting on July 21, 2020.

### d.    No defined subclass to support a partial evacuation claim

In the Findings and Opinion by Magistrate Judge Beckerman, she refers to a "partial evacuation." ECF 154, p.165 ("As discussed, the record suggests that each of the Individual Defendants could have ordered complete (or partial) evacuations of MCDC's housing floors and knew that tear gas continued to infiltrate the building."

The First Amended Complaint does not include a failure to protect claim based on partial evacuation. More importantly Plaintiffs have not defined a class or subclass regarding who, if any, adults in custody Multnomah County failed to evacuate. As a result, there is no way for the parties it this court to evaluate whether this claim has a common interest with the rest of the class.

For example, Plaintiffs' own expert believed an evacuation was potentially warranted sometime in July:

"1 Q And that's -- and I know another obvious
2 question, but that's the only step that would have
3 removed them from the exposure to tear gas, correct?
4 A Well, short of -- short of the events
5 outside them not happening.
6 Q Yeah.
7 A Yeah, it -- I think that if we assume
8 that the events that -- that occurred would have

Page 15 – DEFENDANTS' MOTION TO DECERTIFY CLASS

9 occurred, then yeah, I think the answer was, in the
10 first part of July, to evacuate."

(Declaration of Christopher A. Gilmore in Support of Motion to Decertify Class, ¶16, , Exhibit 14). Representative Sean Berglund would be of no value to the Eighth Amendment subclass warranting a partial evacuation. In addition, there are no other variables identified to know which adults in custody would be prioritized for a partial evacuation and as a result now way to determine whether they have a common interest or if the named representatives are adequate.

For this reason, the class cannot be certified based on a claim for a partial evacuation, there is no claim asserted and Plaintiffs have not properly defined a subclass as required under FRCP 23.

### e.    No claim for failure to provide linen or clothing exchanges

As discussed in the Findings and Opinion by Magistrate Judge Beckerman, the "practice or custom" includes: "* * * receiving the showers and changes of clothes and bed linens necessary to avoid needless pain and suffering." (ECF No. 154, p. 165). This is not included in the First Amended Complaint and not supported by the record.

The First Amended Complaint has no reference to clothing or linen exchanges at all. Nor is there any reference to a failure to provide either in the claims under the Eighth or Fourteenth Amendment or the *Monell* claim. (ECF No. 44, ¶¶91-98 (FIRST CLAIM FOR RELIEF) and ¶¶105-109 (FIFTH CLAIM FOR RELIEF).

Even if this omission is overlooked, there is no evidence at all in the record that any adult in custody ever filed a grievance, medical request form, or service request form complaining of lack of the need for additional linen or clothing exchanges.

/ / /

/ / /

Page 16 – DEFENDANTS' MOTION TO DECERTIFY CLASS

As this Court noted:

> "Plaintiffs do not explain how additional showers or changes of clothing and bed linens would have prevented their exposure to tear gas given the nightly, building-wide infiltration of tear gas."

(ECF No. 162, p. 16).

Similarly, there is no evidence that adults in custody were ever denied access to water.

This Court recognized this deficiency as well:

> "As to Plaintiffs' passing argument that Defendants "could have[] directed food service staff to bring more water to AICs to ensure adequate hydration, Response, ECF 130 at 46, Plaintiffs do not point to any evidence that Defendants ever denied an AIC's request for water, or even any evidence that an AIC ever requested more water in response to tear gas exposure."

(ECF No. 162, footnote 3).

Failure to provide access to additional clothing, linen exchanges or water cannot be a common question of law or fact in this case because it is either not in the First Amended Complaint and is not supported by the record. Further, Plaintiffs offer no evidence that these issues were addressed at a policy level that would support a *Monell* claim. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 399–400, 109 S. Ct. 1197, 1210, 103 L. Ed. 2d 412 (1989) (municipal policy cannot be inferred from decisions of low-level employees).

### f.    No common injury

Where there are highly varying circumstances regarding liability and damages a class action is not warranted. *In re Paxil Litig*., 212 F.R.D. 539, 548 (C.D. Cal. 2003) (Individual issues is a barrier to certification because "[t]he putative plaintiffs thus took Paxil at various times, with different dosages, and for different underlying ailments.").

Damages must be "capable of measurement on a class-wide basis." *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016). A methodology for calculation of damages

Page 17 – DEFENDANTS' MOTION TO DECERTIFY CLASS

that cannot produce a class-wide result is not sufficient to support certification. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014); *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 495 (C.D. Cal. 2013) (certification looks to whether there is a standard injury); and *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (Highly individualized damages that would not be adequately represented through a sampling defeats certification).

In addition to the varying degrees of exposure discussed above, the record in this case is clear that the pre-existing mental health histories varies widely for the representative Plaintiffs. (Gilmore Declaration, ¶3, Exhibit 1, 000033 - raped while homeless, 000733 – history of abuse starting at childhood and 000045 – witnessed her brother getting burned on most of his body and ¶4 , Exhibit 2, 002354-56 - victim of sexual assault by stepfather and his friends beginning in childhood, witnessed multiple homicides starting at age 12, attempted suicide on multiple occasions and was incarcerated for 18 years; and ¶5, Exhibit 3, 000115 - PTSD symptoms are from witnessing violence at home and in the community; and ¶6, Exhibit 4, no mental health issues prior or after).

The same is true for other adults in custody who were deposed during discovery. (Gilmore Declaration, ¶7, Exhibit 5, 080020 - history of PTSD and schizophrenia; ¶8, Exhibit 6, 024609 - mom passed away when I was young, kidnapped, witness to a murder, and sexually abused; ¶9, Exhibit 7, 058764 - saw someone murdered while in custody; ¶10, Exhibit 8, violence growing up and incarceration; ¶11, Exhibit 9, 044934 - history of PTSD and Bipolar Disorder; ¶12, Exhibit 10, intervened in attack on deputy while in custody); ¶13, Exhibit 11, no mental health issues; and ¶14, Exhibit 12, involved in gang violence and thrust into custody with hardened criminals at a young age). This variation is compounded by the fact that the time in

Page 18 – DEFENDANTS' MOTION TO DECERTIFY CLASS

custody, and consequently the frequency and degree of exposure, varies considerably throughout the class.

The actual mental health injuries for Plaintiffs also varied:

**Theresa Davis**: No reports of anxiety relating to tear gas until July 22, 2020. (ECF No. 106-31, p. 12 of 15).

**Robin Lundy**: Never experienced any trauma-related anxiety until New Year of 2022. (Gilmore Declaration, ¶15, Exhibit 13).

**Rashawd Duhart**: No identifiable mental health issues relating to tear gas while in custody.

**Sean Berglund**: Does not claim any mental health issues from tear gas at all. (Gilmore Declaration, ¶16, Exhibit 4).

Even without any pre-existing conditions, the emotional distress would vary significantly depending on the length of time in custody and the severity of the law enforcement response.

Given these variables there is no efficient model that would avoid the need for an individualized assessment of damages. This is particularly true given most people who go through a traumatic event will not develop PTSD. https://www.ptsd.va.gov/understand/common/common_adults.asp and Stein DJ, Seedat S, Iversen A, Wessely S. Post-traumatic stress disorder: medicine and politics. Lancet. 2007 Jan 13;369(9556):139-44. doi: 10.1016/S0140-6736(07)60075-0. PMID: 17223477, https://www.sciencedirect.com/science/article/pii/S0140673607600750?via%3Dihub ("However, even in instances of serious trauma, not all people develop the disorder. Thus, there are specific factors that predict vulnerability and resilience after exposure to trauma, including those that predate the trauma (e.g., genetic variation), those during the trauma (e.g. severity and duration of the trauma), and those are present after the trauma (e.g. social support).").

Page 19 – DEFENDANTS' MOTION TO DECERTIFY CLASS

To certify a damages class under Rule 23(b)(3), plaintiffs have a higher burden of proving that common questions predominate over individual ones. *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1254 (9th Cir. 2024). Merely gesturing at a model or describing a general method will not suffice, Plaintiffs must **chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable** as applied to the facts of a given case. *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024), cert. denied, 145 S. Ct. 1308, 221 L. Ed. 2d 396 (2025).

This Court should not allow this action to move forward merely on the assurance of counsel that some solution will be found in the future. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010).

### 2. *No Typicality*

Plaintiffs are not typical representatives of the class as a whole.

The majority of the class were in custody for four (4) days or less:



Page 20 – DEFENDANTS' MOTION TO DECERTIFY CLASS

(Declaration of Jonathan Harms Mahlandt¸¶5, Exhibit 1). At least 691 of the 1332 adults in custody were in housing for four (4) days or less, approximately 51% of the class. (Mahlandt Declaration, ¶6).

In contrast, Plaintiffs' time in custody is as follows:

**Theresa Davis**: June 11 to July 26, 2020 (RFA No. 3 and 4)          35 days

**Robin Lundy**: Entire class period (RFA No. 1)          63 days

**Rashawd Duhart**: Entire class period (RFA No. 1)          63 days

**Sean Berglund**: June 5 to June 13, 2020 (ECF No. 31)          9 days

Rashawd Duhart and Robin Lundy represent roughly 5% of the class who were in custody for the entire time period.  (Mahlandt Declaration, ¶6).  An even smaller fraction was in custody for 35 days.

Liability in this case depends on whether Plaintiffs can demonstrate Defendants knew about a substantial risk of serious harm. All of the Fourteenth Amendment class representatives are skewed to the higher end of the spectrum of exposure which will not provide any insight into liability for the majority of the class who were in custody for only a few days.

More recently lead Plaintiff Theresa Davis failed to appear to a scheduled deposition and is no longer in contact with opposing counsel. As a result, she is not vigorously pursuing the interests of the class and is not an appropriate lead Plaintiff.

### 3.       *Inadequate Representation*

Under FRCP 23(a)(4) the representative parties must fairly and adequately protect the interests of the class. As stated above, the lead Plaintiffs do not represent the majority of the class members based on length of time in custody and location in the jail. They will not represent the same interests of the majority of the class with regard to liability. All of the Fourteenth

Page 21 – DEFENDANTS' MOTION TO DECERTIFY CLASS

Amendment Plaintiffs were in custody the entire summer. Most of the AICs were in custody for less than four (4) days. Even looking at the AICs who were in custody the entire summer, only a few ever raised the issue of tear gas at all. As a result, Robin Lundy is an outlier when it comes to representing the class as opposed to representing the interests of the class as a whole. The same is true for Theresa Davis who is currently unavailable as of the date of this Motion.

The representative Plaintiffs as a whole fail to represent the class with regard to time in custody. This is directly related to the extent of tear gas exposure and the nature of the injuries. These same issues are a part of the legal analysis on liability that considers whether there was a substantial risk of a serious harm. Because the representative Plaintiffs are outliers at trial the question of liability will not be resolved for the class as a whole.

If representatives are designated at all in this case, they must be identified based on length of time in custody, when they were in custody, whether they are pre-trial detainees or convicted prisoners, and whether the nature of their injuries are common to the class as a whole. A vast majority of adults in custody failed to report any medical or mental health concerns. (ECF No. 89, p. 30). Those same adults who failed to report anything likely did not seek any professional mental health or medical care. In contrast the designated representatives are all claiming either significant mental health problems (aggravation of PTSD) or continuing medical problems (continuing cough relating to tear gas). The more common injury in this class is short acute short-term symptoms from exposure to tear gas and no continuing medical problems. (ECF No. 101, pp. 93-94) ("In many cases the symptoms subsided once the tear gas subsided, consistent with the medical literature," and "no ongoing concerns were documented in the medical record.")). The majority of the class is therefore completely unrepresented.

Page 22 – DEFENDANTS' MOTION TO DECERTIFY CLASS

### 4.      No Predominance

Plaintiffs' Motion for Class Certification rests on FRCP 23(b)(3):

> "To maintain a class, Plaintiffs must establish that common questions of law or fact predominate over individual questions, and that a class is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3)."

(ECF No. 30, p. 33).

Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device.

The question of predominance begins with the underlying elements of the claim. In this case the remaining *Monell* claim. In this case the underlying constitutional claim is based on a failure to protect under the Fourteenth Amendment:

To bring a failure to protect case under the Fourteenth Amendment Plaintiffs must show:

1.      The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

2.      Those conditions put the plaintiff at substantial risk of suffering serious harm;

3.      The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and

Page 23 – DEFENDANTS' MOTION TO DECERTIFY CLASS

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

4.      By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

Plaintiffs have failed to offer any evidence that exposure to a residual amount of tear gas over a few days presents a substantial risk of serious harm. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (substantial risk of serious harm is an element of a Fourteenth Amendment failure to protect claim); *Spain v. Procunier*, 600 F.2d 189, 196 (9th Cir. 1979) (there can be no constitutional violation if the record is devoid of any evidence of more than a de minimis exposure to tear gas); and *Reach Cmty. Dev. v. United States Dep't of Homeland Sec.*, 174 F.4th 1143, 1145 (9th Cir. 2026) (no due process right for residual tear gas exposure deployed in response to crowd control).

The proposed class in this case also includes members who likely suffered no constitutional injury at all by including:

❖      Adults who were in custody on days where no tear gas was deployed;

❖      Adults who were in custody for only a single day when tear gas was deployed; and

❖      Adults who were in custody during June when tear gas was intermittent.

None of the above class members were likely to have suffered a constitutional injury at all in this case.

Similarly, given the wide range of exposures during the course of the summer, the common questions do not predominate over the individual injury with regard to both liability and damages. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997) (FRCP 23(b)(3) not met in a class action involving asbestos exposure given the wide range of exposures and consequent injuries).

Page 24 – DEFENDANTS' MOTION TO DECERTIFY CLASS

### 5.    *Class Action Not Superior*

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689 (1997).

In this case Plaintiffs' claims are for tens of thousands of dollars per night in custody leading to a massive total payout for the class that is far afield from amassing relatively small recoveries into a single action. This case is not the superior method for adjudication and does not warrant certification.

Finally, the numerous variables affecting the frequency and concentration of tear gas for each custody cycle and the wide variety of pre-existing mental health history undermine class action as the superior method for a fair and efficient adjudication. *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (District Court did not abuse its discretion in decertifying class because the issue of damages proof would be highly individualized and poorly addressed through a sampling of the population).

### F.    CONCLUSION

In conclusion, class actions are the exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013). They are also onerous and costly for defendants, who may feel pressured into settling questionable claims to avoid even a small chance of a devastating loss. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350, 131 S.Ct. 1740, 179

Page 25 – DEFENDANTS' MOTION TO DECERTIFY CLASS

L.Ed.2d 742 (2011). This cost only increases once the class is certified, as the price the defendant will pay to avoid the risk of a catastrophic judgment at trial skyrockets, even if the claims themselves may not be meritorious. *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1257–58 (9th Cir. 2024).

In this case instead of looking towards commonality, Plaintiffs are asserting significant damages based on individual medical assessments to leverage as much money as possible through the psychological harm caused to a population with diverse mental health issues. A rigorous certification process warrants against this type of leveraging of questionable claims. *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1257–58 (9th Cir. 2024).

Defendants request decertification of the class as a whole for the reasons set forth above. In the event this Court chooses not to decertify, Defendants request:

1. Excluding class members who suffered no injury or only a de minimis injury because:

    a. They were in custody on days where no tear gas was deployed; or

    b. They were in custody for only a single day when tear gas was deployed.

2. Clarifying the remaining *Monell* claim to:

    a. Eliminate sporadic tear gas during the month of June; and

    b. Limit any pattern or practice to the policy of closing the dampers on a daily basis on July 21, 2026.

3. Directing Plaintiffs to identify adequate representatives that will address liability including:

    a. Class members who were in custody for less than four (4) days under both the Fourteenth and Eighth Amendment in both June and July;

    b. Class members who have no documented requests for medical or mental health problems relating to tear gas while in custody under both the Eighth and Fourteenth Amendment; and

Page 26 – DEFENDANTS' MOTION TO DECERTIFY CLASS

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

     c.     Class members who have no medical or mental health problems relating to tear gas that required professional care at all under both the Eighth and Fourteenth Amendment.

4.     Decertification of any potential claim for:

     a.     Failure to provide clothing, linen or water; and

     b.     Failure to conduct a partial evacuation.

DATED this 18th day of July, 2026.

Respectfully submitted,
JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

**/s/ Christopher A. Gilmore**

_____
Christopher A. Gilmore, OSB No. 980570
Senior Assistant County Attorney
   *Of Attorneys for Defendants Multnomah County,*
   *Michael Reese, Steven Alexander, Jeffery Wheeler*

Page 27 – DEFENDANTS' MOTION TO DECERTIFY CLASS